**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DEWAYNE GREGOIRE**                                                    **CIVIL ACTION**

**VERSUS**                                                                       **NO. 14-840**

**ENTERPRISE MARINE SERVICES,**
**LLC AND ABC INSURANCE CO.**                                **SECTION "K"(3)**

<u>ORDER AND REASONS</u>

Before the Court is Plaintiff Dewayne Gregoire's Motion to Remand the Instant Action to the 32nd Judicial District Court for the Parish of Terrebonne, Louisiana.  (R. Doc. 6).  Having reviewed the pleadings, memoranda, and the relevant law, the Court, for the reasons assigned, GRANTS the motion for remand.

I.       **BACKGROUND**

On March 1, 2014, Dewayne Gregoire ("Gregoire") filed a "Seaman's Petition for Damages" in the 32nd Judicial District Court for the Parish of Terrebonne against Enterprise Marine Services, L.L.C. ("Enterprise") and ABC Insurance Company ("ABC"), alleging claims "under the Jones Act and the General Maritime Law" for personal injuries sustained while working for Enterprise and invoking the "saving to suitors" clause under 28 U.S.C. § 1333. (R. Doc. 1-2, 2).  In his petition, Gregoire alleges that he was a crew member of the M/V Marie, an Enterprise vessel, and was a seaman under the terms and conditions of the Jones Act in the course and scope of his employment as a tankerman on the vessel.  (R. Doc. 1-2, 2).  Gregoire alleges that, while serving on the M/V Marie, he sustained injuries from a slip and fall accident as a result of the unseaworthiness of the vessel and negligence of the Defendant.  (R. Doc. 1-2. 3-4).  In addition, Gregoire asserts in his petition that he is entitled to recover maintenance and

1

cure from the Defendants. (R. Doc. 1-2, 6).  Gregoire further alleges that Defendants spoiled evidence in failing to preserve evidence of the scene of the accident. (R. Doc. 1-2, 7).  Thus, Gregoire's petition sets forth the following four counts: (i) unseaworthiness of Enterprise's vessels; (ii) negligence under the Jones Act and General Maritime Law; (iii) maintenance and cure; and (iv) spoliation of evidence.  (R. Doc. 1-2, 5-8).  On March 12, 2014, Enterprise was served with a copy of Gregoire's suit and avers that it timely removed the suit from Louisiana state court on April 10, 2014 pursuant to 28 U.S.C. Sections 1441 and 1333.  (R. Doc. 7, 3). Gregoire then timely filed the instant Motion to Remand. (R. Doc. 6).

In his Motion to Remand, Gregoire asserts that suits alleging Jones Act claims alone or in conjunction with general maritime law claims may not be removed from state court.  (R. Doc. 6-1, 3).  Gregoire avers that Jones Act claims are unquestionably non-removable under 28 U.S.C. § 1445(a), as incorporated by 46 U.S.C. § 30104, and general maritime law causes of action asserted under the saving to suitors clause are not within the original jurisdiction of the federal court pursuant to 28 U.S.C. § 1333.  (R. Doc. 6-1, 8).  Therefore, Gregoire contends that general maritime law claims asserted in connection with Jones Act claims do not make the Jones Act claims removable under the removal statute, 28 U.S.C. § 1441(c).  (R. Doc. 6-1, at 3).  Because Gregoire believes that the Defendant lacked a reasonable basis for seeking removal, Gregoire requests "payment of just costs and actual expenses" pursuant to 28 U.S.C. § 1447(c).  (R. Doc. 6-1, 13).

In opposition, Enterprise asserts that, because "Plaintiff's Jones Act claim is joined with other claims which are removable under 28 U.S.C. § 1441(a), the Jones Act claims is [*sic*] also removable under 28 U.S.C. § 1441(c)."  (R. Doc. 7, 2).  Enterprise bases its conclusion on its assertion that general maritime law claims are removable based on jurisdiction under 28 U.S.C. §

2

1333, despite noting that, historically, courts have not considered such claims to be removable. (R. Doc.7, 6).  Because of the Federal Courts Jurisdiction and Venue Clarification Act of 2011[1] ("2011 Amendments"), however, Enterprise asserts that 28 U.S.C. Section 1441(b) no longer prohibits removal of general maritime law claims except with "other caveats or restrictions" and those claims "fall within the federal court's original jurisdiction" making them removable under Section 1441(a). (R. Doc. 7, 7-9).  Therefore, under 28 U.S.C. § 1441(c), the Jones Act claims are removable along with the general maritime law claims.  As to the Jones Act claim, however, Enterprise does "concede that it is well-settled that actions arising under the Jones Act may be filed in state or federal courts and are generally not removable."  (R. Doc. 7, 10).  Thus, Enterprise contends in the alternative that, should the Court find that the Jones Act claim remains non-removable, the Jones Act claim alone may be severed from the removable general maritime law claims of unseaworthiness and maintenance and cure and remanded to the state court.  *Id.*

## II.    LEGAL STANDARD

Unless "otherwise expressly provided by Act of Congress," a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  It is well-settled that, when faced with a motion to remand, the removing party "bear[s] the burden of showing that federal jurisdiction exists." *De Aguilar v. Boeing Co.* 47 F.3d 1404, 1408 (5th Cir.1995).  In determining whether jurisdiction exists, the court considers jurisdictional facts as they exist "at the time of removal." *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir.1995).  Additionally, because removal jurisdiction implicates important federalism concerns, the federal removal statute is subject to strict construction.  *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988); *Frank v. Bear*

---

[1] Pub. L. No. 112-63, 125 Stat. 758.

*Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).  Any ambiguities regarding whether removal

jurisdiction is proper should be resolved in favor of the party seeking remand and against federal

jurisdiction.  *See, e.g.*, *Manguno v. Prudential Property and Cas. Ins. Co.,* 276 F.3d 720, 723

(5th Cir. 2002).


## III.   DISCUSSION

The motion to remand in this matter places at issue whether a maritime matter instituted

in state court falls within the removal jurisdiction of this Court, "a question that has been beset

by confusion and uncertainty over the years"[2] and that has been further complicated by discord

among district courts in their recent opinions on the matter.  The issue in this case hinges upon

the operation of the "saving to suitors clause," 28 U.S.C. § 1333, with respect to removal of

maritime and admiralty claims under the removal statute.  Recent district court opinions evidence

a split in opinion as to whether the 2011 Amendments to the removal statute, 28 U.S.C. § 1441,

affected the prior precedent on admiralty removal jurisdiction.  According to the seminal case,

*Ryan v. Hercules Offshore, Inc.,* 945 F.Supp.2d 772 (S.D.Tex. May 13, 2013), the 2011

Amendments struck a clause from Section 1441(b) that prevented general maritime law claims

(alone) from being removed as it was an "Act of Congress" that prohibited removal under

1441(a); because Section 1333 also grants jurisdiction to the federal courts over admiralty and

maritime matters, then, the *Ryan* court reasoned that general maritime law claims have become

removable.

Enterprise's argument, as discussed above, incorporates the same logic: (1) Section

1441(c) allows removal of claims made non-removable by statute when asserted in conjunction

---

[2] 14A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3674 (4th ed. 2014).

4

with claims falling within the original jurisdiction of this Court (and are therefore removable); (2) Jones Act claims are non-removable by statute; (3) general maritime law claims are removable alone and fall within the original jurisdiction of the federal district court under 28 U.S.C. § 1333; (4) therefore, both the Jones Act claims and the general maritime law claims are removable under 1441(c).  This logic depends on the assumption that general maritime law claims are removable.  Enterprise, while noting that historically these claims were not removable absent some other source of jurisdiction, agrees with the *Ryan* court that the 2011 Amendments have now made these claims removable.

Though some district courts have followed *Ryan*'s reasoning, this Court concludes that it is precisely "the statutory grant of admiralty jurisdiction, 28 U.S.C. § 1333, and more than 200 years of precedent interpreting this grant"[3] rather than the 2011 amendment to the removal statute that determine the removability of Gregoire's claims.  In short, general maritime law claims are not now removable—nor have they ever been—without an independent basis of jurisdiction other than 28 U.S.C. § 1333, and defendants may not elude the non-removable nature of Jones Act claims when such claims are asserted in conjunction with general maritime law claims under Section 1441(c).

### a.  General Maritime Law Claims

#### i.  Historical Underpinnings of Admiralty Jurisdiction

To exercise subject matter jurisdiction over any case, the lower federal court must find that both a Constitutional and statutory basis for jurisdiction exist.[4]  Article III, section 2, of the United States Constitution grants federal courts jurisdiction over "all cases of admiralty and

---

[3] *Colonel v. AK Victory*, C13-2304JLR, 2014 WL 820270 (W.D. Wash. Feb. 28, 2014).
[4] *Sheldon v. Sill*, 49 U.S. 441, 442, 8 How. 441, 12 L.Ed. 1147 (1850).

maritime jurisdiction." U.S. Const. art. III, § 2.[5]  The Article impliedly contained three grants, empowering (i) Congress to confer admiralty and maritime jurisdiction on the tribunals inferior to the Supreme Court, (ii) the federal courts to draw on the substantive law inherent in maritime jurisdiction and continue to develop it, and (iii) Congress to revise and supplement the maritime law within the limits of the constitution.  *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 360-361, 79 S.Ct. 468, 474, 3 L.Ed.2d 368 (1959).  While the Constitution granted the judicial power over admiralty matters to the Supreme Court, Congress statutorily made admiralty matters cognizable within lower federal courts' jurisdiction in the Judiciary Act of 1789.

Section 9 of the Judiciary Act of 1789 statutorily granted to the lower courts both diversity and maritime jurisdiction.  Ch. 20, § 9, 1 Stat. 76-77.[6]  As to admiralty or maritime jurisdiction, the grant was "[t]hat the district courts shall have, exclusively of the courts of the several States [, . . .] exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction."  Ch. 20, § 9, 1 Stat. 76-77. This grant of jurisdiction in part recognized the need for uniformity in maritime law as it was thought of as part of "the law of nations" and affected foreign commerce.[7]  But the drafters also added the "saving to suitors" clause, qualifying the jurisdictional grant by "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Ch. 20, § 9, 1 Stat. 76-77.  The theory as to "[w]hat the drafters of the Judiciary Act intended in creating the saving to suitors clause is not entirely clear

---

[5] *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 360, 79 S.Ct. 468, 474, 3 L.Ed.2d 368 (1959) ("Article III, s 2, cl. 1 (3d provision) of the Constitution and section 9 of the Act of September 24, 1789, have from the beginning been the sources of jurisdiction in litigation based upon federal maritime law.").

[6] *Romero*, 358 U.S. 354, 361, 79 S.Ct. 468, 474, 3 L.Ed.2d 368 (1959).

[7] *See Romero*, 358 U.S. at 361 n.8, quoting Alexander Hamilton: "The most bigoted idolizers of State authority have not thus far shown a disposition to deny the national judiciary the cognizances of maritime causes. These so generally depend on the laws of nations, and so commonly affect the rights of foreigners, that they fall within the considerations which are relative to the public peace." The Federalist, No. 80 (Lodge ed. 1908) 497-498. *See also* Thomas J. Schoenbaum, *Admiralty and Maritime Law*, §3-2, at 115 (5th ed., 2012) ("The purpose of a special grant of admiralty jurisdiction to the federal courts to serve as both forums and interpreters of maritime law is to provide uniform rules of law for the business of shipping, to facilitate maritime commerce, and to apply uniform remedies for persons traveling or working on navigable waters in connection with these maritime activites.")

and has been the subject of some debate."[8]  Yet the Supreme Court has made clear that grant of

federal admiralty jurisdiction was not intended to be entirely exclusive.[9]  Thus, in addition to

granting lower federal courts jurisdiction, the saving to suitors clause of Section 9 recognized

that "some remedies in matters maritime had been traditionally administered by common-law

courts of the original States," and the clause preserved that concurrent jurisdiction of the state

and federal courts.[10]  Congress has since codified the admiralty jurisdictional grant in 28 U.S.C.

§ 1333 ("Section 1333"), providing subject matter jurisdiction to the federal courts:

> The district courts shall have original jurisdiction, exclusive of the
> courts of the States, of: (1) Any civil case of admiralty or maritime
> jurisdiction, saving to suitors in all cases all other remedies to
> which they are otherwise entitled...

28 U.S.C. § 1333 (2012).  Since its enactment, Congress has revised the language of the saving

to suitors clause, but "its substance has remained largely unchanged."[11]

At first blush, the substance of the saving to suitors clause read in conjunction with the

grant of "exclusive" jurisdiction might appear contradictory.[12]  However, the Supreme Court has

reconciled the concomitant grant of exclusive federal jurisdiction and the saving to suitors

---

[8] *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 444, 121 S.Ct. 993, 999, 148 L.Ed.2d 931 (2001).

[9] *The Moses Taylor,* 71 U.S. 411, 421, 18 L.Ed. 397 (1866) ("Again, the Federalist shows, that the grant of jurisdiction to the Federal courts was not intended to be exclusive; and at all events that 'the State courts would be divested of no part of their primitive jurisdiction, further than may relate to an appeal.'")(citation omitted); *Lewis,* 531 U.S. at 444, 121 S.Ct. at 999 ("The Court theorized that the saving to suitors clause was 'inserted, probably, from abundant caution, lest the exclusive terms in which the power is conferred on the District Courts might be deemed to have taken away the concurrent remedy which had before existed. This leaves the concurrent power where it stood at common law.'")(citation omitted).

[10] *Romero,* 358 U.S. at 362, 79 S.Ct. at 475; *The Moses Taylor,* 71 U.S. at 422 ("It is well known that at the time of the adoption of the Constitution, whatever admiralty jurisdiction existed in this country, was exercised by the State courts, with the exception of piracies and felonies on the high seas and appeals in cases of capture."); *see also Lewis,* 531 U.S. at 445, 121 S.Ct. at 999 (stating that the saving to suitors clause preserved concurrent jurisdiction of the state and federal courts over common law maritime actions).

[11] *Lewis,* 531 U.S. at 444, 121 S.Ct. at 998.

[12] *Madruga v. Superior Court of State of Cal. in & for San Diego Cnty.,* 346 U.S. 556, 560, 74 S.Ct. 298, 300, 98 L.Ed. 290 (1954) ("Viewed superficially the clause giving United States district courts exclusive admiralty or maritime jurisdiction appears inconsistent with the clause which permits persons to sue on maritime claims in common law courts.").

clause's preservation of concurrent jurisdiction.[13]  The Court determined that "[a]dmiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings *in rem*, that is where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien."[14] The rationale for such exclusivity was that "an *in rem* action was not a common law remedy, but instead a proceeding under civil law," which the state courts were not "competent to give" under the Judiciary Act.[15] "But the jurisdictional act does leave state courts 'competent' to adjudicate maritime causes of action in proceedings '*in personam*,' that is, where the defendant is a person, not a ship or some other instrument of navigation."[16]  Thus, historically a suitor could elect to proceed in federal court sitting in admiralty through an *in rem* proceeding or elect to proceed *in personam* via a civil action under the saving to suitors clause in a state court or on the common-law side of the federal district court.[17]

Whether a litigant brings the maritime suit under admiralty jurisdiction or at common law has "important consequences for litigants."[18]  Though "[t]he general rules of the maritime law apply whether the proceeding be instituted in an admiralty or common-law court,"[19] remedies available in suits brought in admiralty versus those brought "at law" differ.  As to suits at law under the saving to suitors clause, the Supreme Court has said that "[i]t is not a remedy in the

---

[13] *Id.*

[14] *Id.*; *Am. Dredging Co. v. Miller*, 510 U.S. 443, 446-47, 114 S. Ct. 981, 985, 127 L. Ed. 2d 285 (1994) ("An in rem suit against a vessel is, we have said, distinctively an admiralty proceeding, and is hence within the exclusive province of the federal courts.")

[15] *Lewis*, 531 U.S. at 444, 121 S.Ct. at 999 (citing *The Hine v. Trevor*, 4 Wall. 555, 571-72, 18 L.Ed. 451 (1866); *The Moses Taylor*, 4 Wall. 411, 431, 18 L.Ed. 397 (1866)).

[16] *Id.* at 560-61; *see also* Schoenbaum, *supra* note 7, §4-4, at 239 n. 4 ("The policy basis of the concurrent jurisdiction of state courts over actions *in personam* is that the common law courts had the power to hear such cases prior to the adoption of the Constitution.").

[17] Schoenbaum, *supra* note 7, §4-4, at 239-40.

[18] Schoenbaum, *supra* note 7, §3-2, at 118; Wright, Miller, & Cooper, *supra* note 2, § 3671.4 ("The grant or denial of admiralty jurisdiction in a case in federal court is important not only because of the different substantive law that will apply but also because of the special procedures available in an admiralty action.")

[19] *Carlisle Packing Co. v. Sandanger*, 259 U.S. 255, 259, 42 S. Ct. 475, 477, 66 L. Ed. 927 (1922).

common-law courts which is saved, but a common-law remedy."[20]   Generally common-law

remedies are those provided by suits *in personam.*[21]   Common law remedies under the saving

clause, therefore, are enforceable in state courts or on the common-law side of the federal

courts.[22]   While the *remedy*, or "the means employed to enforce a right or redress an injury,"[23]

must be one that common-law can afford, a suit brought on the "law side" of the court is "not

restricted to the enforcement of common law *rights*."[24]   Indeed, "a right peculiar to the law of

admiralty may be enforced either by a suit in admiralty or by one on the law side of the court."[25]

A chief advantage of filing suits at common law is the availability of a jury trial, as guaranteed

by the Seventh Amendment, which is a remedy generally unavailable to suits in admiralty.[26]

Yet filing a suit in admiralty provides "a host of special rights, duties, rules, and

procedures."[27]   Admiralty procedures may be of particular import to suitors in circumstances

---

[20] *The Moses Taylor*, 71 U.S. 411, 431, 18 L.Ed. 397 (1866).

[21] *See, e.g.*, *Leon v. Galceran*, 78 U.S. 185, 191, 11 Wall. 185, 20 L. Ed. 74, 1870 WL 12837 (1870) ("[T]he common law is as competent as the admiralty to give a remedy in all cases where the suit is *in personam* against the owner of the property.")

[22] *Romero*, 358 U.S. at 363, 79 S.Ct. at 475, 3 L.Ed.2d 368 (1959); *see also Atl. & Gulf Stevedores, Inc., Ellerman Lines, Ltd.*, 369 U.S. 355, 359-60, 82 S. Ct. 780, 783-84, 7 L. Ed. 2d 798 (1962) (Noting that a maritime suit may be brought at admiralty or may be pursued on the law side of the federal court). Such common-law remedies in in personam actions have included "equitable enforcement of a lien arising from a maritime transaction, specific enforcement of an arbitration and other agreements, and forfeiture proceedings." Wright, Miller, & Cooper, *supra* note 2, § 3672 (citations omitted).

[23] *Chelentis v. Luckenbach S.S.Co.*, 247 U.S. 372, 384, 38 S.Ct. 501, 504, 62 L.Ed. 1171 (1918).

[24] *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 106, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (emphasis added).

[25] *Id.* For example, a plaintiff "may wish to proceed in rem in admiralty when the maritime claim creates a maritime lien against a particular res, most commonly a vessel, as is evidenced . . . numerous illustrative cases." Wright, Miller, & Cooper, *supra* note 2, § 3672.

[26] Civil actions at common law carry with them the right to a jury trial. U.S. Const. amend. VII; *see Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 360, 82 S. Ct. 780, 784, 7 L. Ed. 2d 798 (1962)(stating that diversity suits have right to trial by jury); *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir. 1975) (noting that civil suits, such as those brought under the saving to suitors clause, are entitled to trial by jury). However, "[o]ne of the historical procedures unique to admiralty is that a suit in admiralty does not carry with it the right to a jury trial." *Luera v. M/V Alberta*, 635 F.3d 181, 188 (5th Cir. 2011) (citing *Waring v. Clarke*, 46 U.S. 441, 460, 5 How. 441, 12 L.Ed. 226 (1847)); *Fitzgerald v. U. S. Lines Co.,* 374 U.S. 16, 20, 83 S. Ct. 1646, 1650, 10 L. Ed. 2d 720 (1963)(noting that the Court has held that the Seventh Amendment does not require jury trials in admiralty).

[27] *Lewis*, 531 U.S. at 446, 121 S.Ct. at 999; *see generally T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 586-87 (5th Cir. 1983)(explaining the procedural and substantive consequences of proceeding in admiralty).

where, for example, the suitor seeks to enforce a maritime lien requiring an *in rem* process.[28] Certain procedural formalities follow the suitor's choice.[29]  Where the claim is cognizable only in admiralty, it is assumed that the claim is brought under the federal court's admiralty jurisdiction pursuant to Section 1333.[30]  In order to guarantee the application of admiralty procedures where the claim may be brought under admiralty jurisdiction in addition to another some other ground of federal jurisdiction, the suitor should elect whether to file in admiralty when filing in federal court and so specify in the pleading.[31]

The basis for jurisdiction when the suit is brought in admiralty or under saving to suitors clause in federal court also may affect the availability of forums to the suitor.  When the matter proceeds in admiralty alone, Section 1333 provides "exclusive" jurisdiction to hear any matter in

---

[28] *See* Wright, Miller, & Cooper, *supra* note 2, § 3672 ("A plaintiff, of course, may wish to proceed in rem in admiralty when the maritime claim creates a maritime lien against a particular res, most commonly a vessel…"); *Luera v. M/V Alberta*, 635 F.3d 181, 195 (5th Cir. 2011) (citing *Continental Grain Co. v. The Barge FBL–585,* 364 U.S. 19, 22–23, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)) ("It is a 'long-standing admiralty fiction that a vessel may be assumed to be a person for the purpose of filing a lawsuit and enforcing a judgment.'"); *see also Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 183-84 (5th Cir. 1981) (discussing generally the origins and practicality of the legal notion of holding vessels liable "*in rem*").

[29] Though, historically, the federal courts maintained separate dockets for proceedings in admiralty and proceedings at law, the dockets were merged in 1966 and the Federal Rules of Civil Procedure became applicable to admiralty proceedings.  *See* Fed. R. Civ. P. 1 advisory committee's note (1966 Amendment); *see generally* David W. Robertson, *Admiralty Procedure and Jurisdiction after the 1966 Unification*, 74 MICH. L. REV. 1627 (1976).  The unification of the admiralty and civil rules still preserved "[c]ertain distinctive features of the admiralty practice." Fed. R. Civ. P. 9 advisory committee's notes (1966 Amendment); *see also Durden v. Exxon Corp*., 803 F.2d 845, 849 n. 10 (5th Cir.1986).  For example, the unification was "intended to work no change in the general rule that admiralty claims are to be tried without a jury." *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir. 1975); Fed. R. Civ. P. 9 advisory committee's notes (1966 Amendment). Moreover, "[a]lthough the trend has been towards uniformity of procedure, there are still several important differences in the procedure applicable to admiralty cases."  Wright, Miller, & Cooper, *supra* note 2, § 3671.4; *see T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 586-87 (5th Cir. 1983) ("The Federal Rules of Civil Procedure give special treatment to admiralty claims, as do the Supplemental Rules for Certain Admiralty and Maritime Claims.").

[30] Fed. R. Civ. P. 9(h)("A claim cognizable only in admiralty . . . is an admiralty or maritime claim for those purposes, whether so identified or not."); *Luera v. M/V Alberta*, 635 F.3d 181, 189 (5th Cir. 2011).

[31] Fed. R. Civ. P. 9 ("If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions."); *but see Luera v. M/V Alberta*, 635 F.3d 181, 189 (5th Cir. 2011) ("By the plain terms of Rule 9(h), a claim cognizable only under admiralty jurisdiction does not require a Rule 9(h) election because admiralty procedures will automatically apply to that claim.").

admiralty.[32]  By contrast, when the maritime matter proceeds on the law side of the court under

the saving to suitors clause, courts in early cases traditionally held that the suitor must

demonstrate that another source of jurisdiction exists, such as diversity jurisdiction.[33]

Up until the Judiciary Act of 1875, it was generally accepted that these were the only

bases for jurisdiction in admiralty or maritime matters.[34]  The Judiciary Act of 1875 then

extended the jurisdiction of the federal courts to "all suits of a civil nature at common law or in

equity . . . arising under the Constitution or laws of the United States," [35] creating federal

question jurisdiction now codified at 28 U.S.C. § 1331.  In *Romero v. International Terminal

Operating Company*,[36] the Supreme Court considered the novel question of whether general

maritime law claims were considered "laws of the United States" for purposes of federal

question jurisdiction.  This seminal case on admiralty jurisdiction issued a pronouncement that

not only answered the narrow question regarding federal question jurisdiction but also elucidated

the policies and purpose of the saving to suitors clause.

The Court definitively decided that the Judiciary Act of 1875 did not "permit[] maritime

claims rooted in federal law to be brought on the law side of the lower federal courts."[37]

Unquestionably, the history of admiralty jurisdiction and federalism underscored the Supreme

Court's decision in *Romero*.[38]  In reaching its conclusion, the Court carefully considered the

---

[32] *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996) (citing Frank L. Maraist, Admiralty 10 (3d ed. 1996).

[33] *See, e.g.*, *Leon v. Galceran*, 78 U.S. 185, 188, 11 Wall. 185, 20 L. Ed. 74, 1870 WL 12837 (1870); *The Belfast*, 74 U.S. 624, 644, 19 L.Ed. 266 (1868); *Am. Steamboat Co v. Chase*, 16 Wall. 522, 83 U.S. 522, 533, 21 L.Ed. 369 (1872); *Romero*, 358 U.S. at 362, 79 S.Ct. at 475 ("Since the original Judiciary Act also endowed the federal courts with diversity jurisdiction, common-law remedies for maritime causes could be enforced by the then Circuit Courts when the proper diversity of parties afforded access.").

[34] *Romero*, 358 U.S. at 362, 79 S.Ct. at 475.

[35] Act of Mar. 3, 1875, 18 Stat. 470.

[36] 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

[37] *Id.* at 360.

[38] *See id.* at 372 ("Recognition of the part the States have played from the beginning has a dual significance. It indicates the extent to which an expanded view of the Act of 1875 would eviscerate the postulates of the saving clause, and it undermines the theoretical basis for giving the Act of 1875 a brand new meaning."). Ultimately, the

"language and construction" of the Act of 1875 and "uncovered no basis for finding the additional design of changing the method by which federal courts had administered admiralty law from the beginning."[39]  If the Court had found an "infusion of general maritime jurisdiction" into the Act of 1875, the Court concluded that such a finding would both disregard the construction of the statute and have a "disruptive effect on the traditional allocation of power over maritime affairs in our federal system."[40]  The Court cited two instances of how these judicial policies would create such a "disruptive effect."  First, the "historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away . . . since saving-clause actions would then be freely removable under s 1441."[41]  Second, by making maritime cases "removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters—a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve."[42]  The Court then further detailed complications resulting from a decision including general maritime law claims within the scope of the Act of 1875, emphasizing the fact that "[m]aritime law is not a monistic system."[43]

Because *Romero*'s holding only addressed the question of whether the Judiciary Act of 1875 extended federal question jurisdiction to admiralty and maritime matters, some ambiguity surrounds the significance of its lengthy policy discussion—to which some courts and commentators refer to as dicta—on removal and the suitor's traditional choice in forum.[44]

---

Court concluded that "[t]o give novel sweep to the Act would disrupt traditional maritime policies and quite gratuitously disturb a complementary, historic interacting federal-state relationship." *Id.* at 374.
[39] *Id.* at 368.
[40] *Id.* at 371.
[41] *Id.* at 371-72.
[42] *Id.* at 372.
[43] *See id.* at 372-76.
[44] *See* Wright, Miller, & Cooper, *supra* note 2, § 3674 ("Not surprisingly . . . in a number of cases federal courts have read the Romero dictum as meaning that maritime litigation brought in state courts cannot be removed to

Historically, the original Judiciary Act of 1789 provided only removal for diversity cases—not admiralty[45]—and admiralty suits brought *in personam* on the law side of the federal court required some ground of jurisdiction independent of admiralty jurisdiction.[46]  Thus, maritime cases filed in state courts were removable to a federal court only if diversity jurisdiction existed.[47]  Since *Romero,* courts have continued to hold that admiralty or maritime suits may not be instituted on the law side of the federal court[48] nor may "general maritime law claims . . . be removed from state court unless there is an independent basis of jurisdiction present other than admiralty and maritime jurisdiction," and often cite to *Romero*'s reasoning for guidance.[49]

### ii.  Removal: Admiralty Jurisdiction & the Saving to Suitors Clause

---

federal courts unless diversity of citizenship or another independent ground of federal subject-matter jurisdiction exists."); Steven F. Friedell, *The Disappearing Act: Removal Jurisdiction of an Admiralty Claim*, 30 TUL. MAR. L. J. 75, 82 (Winter/Summer 2006); *In re Chimenti*, 79 F.3d 534, 537 (6th Cir. 1996) ("Although the Supreme Court has never directly held that removal is prohibited, lower courts have relied on strongly worded dicta in *Romero* . . . which support preserving the plaintiff's choice of forum.").

[45] *See Romero*, 358 U.S. at 363, n. 16, 79 S. Ct. at 475, 3 L. Ed. 2d 368 (1959)("The removal provisions of the original Judiciary Act of 1789, 1 Stat. 79, conferred a limited removal jurisdiction, not including cases of admiralty and maritime jurisdiction."); *see also* Ch. 20, § 12, 1 Stat. 76-77.

[46] *See supra* note 33.

[47] Rory Bahadur, *Maritime Removal: An Unlikely Heuristic for Anchoring Three Non-Textual Principles of Original Federal Jurisdiction*, 43 J. Mar. L. & Com. 195, 209 (2012); *Friedell*, *supra* note 44, at 82.

[48] *See, e.g., Ghotra by Ghotra v. Bandila Shipping, Inc.,* 113 F.3d 1050, 1054 (9th Cir. 1997) ("The saving to suitors clause also permits the plaintiff to bring an action 'at law' in the federal district court, provided the requirements of diversity of citizenship and amount in controversy are met.")

[49] Bahadur, *supra* note 47, at 208; *see, e.g., Linton v. Great Lakes Dredge & Dock Co.,* 964 F.2d 1480, 1488 (5th Cir.), *cert. denied,* 506 U.S. 975, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992); *In re Dutile,* 935 F.2d 61, 62-63 (5th Cir.1991) (relying on *Romero*); *Powell v. Offshore Nav., Inc.,* 644 F.2d 1063, 1068 (5th Cir. Unit A May 1981); *Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.,* 359 F.3d 1237, 1241 (10th Cir.2004) ("Courts have consistently interpreted the 'savings clause' to preclude removal of maritime actions brought in state court and invoking a state law remedy, provided there is no independent basis for removal" such as the presence of a federal question or diversity of citizenship."); *In re Chimenti,* 79 F.3d 534, 537 (6th Cir. 1996); *Servis v. Hiller Systems Inc.,* 54 F.3d 203, 206-07 (4th Cir.1995), *cert. denied,* 516 U.S. 1084, 116 S.Ct. 799, 133 L.Ed.2d 747 (1996); *Armstrong v. Alabama Power Co.,* 667 F.2d 1385, 1387-88 (11th Cir. 1982)("We are convinced, though, that the Supreme Court has provided some guidance in Romero . . . . Thus, under the reasoning of Romero, a federal district court should not accept the removal of a saving clause case solely because of its general maritime nature: the maritime nature simply does not provide a ground for federal jurisdiction."); *see also Holcomb v. ERA Helicopters, Inc.,* 618 F. Supp. 339, 343-44 (W.D. La. 1985)(citing *Romero* for the proposition that maritime law claims require diversity jurisdiction); *Zoila-Ortega v. B J-Titan Servs. Co.,* 751 F. Supp. 633, 636-37 (E.D. La. 1990)(same).

Given the unique history of jurisdiction in maritime law and the particular importance of federalism in the sphere of admiralty matters, removal jurisdiction has predictably created confusion.  Removal jurisdiction is a creature of statute and courts have been forced to reconcile its operation with admiralty jurisdiction—particularly in the context of the saving to suitors clause—since its inception.[50]

In *In re Dutile*, 935 F.2d 61 (5th Cir. 1991), the Fifth Circuit defined the parameters of removal jurisdiction in the context of saving to suitors clause cases.  In that case, the Fifth Circuit found that general maritime law claims brought in a state court are not removable under Section 1333 and require both a jurisdictional basis independent of the federal court's admiralty jurisdiction and must meet the forum defendant rule under the removal statute, 28 U.S.C. § 1441(a)[51] ("Section 1441(a).  *Id.*  The *Dutile* court reasoned that Section 1441(a) did not apply to admiralty matters, stating that "[e]mphatically, claims in admiralty, whether designated in rem or in personam, do *not* fall within this category." *Id.* at 63.  Noting that Section 1441(a) was prefaced by the phrase, "Except as expressly provided by Act of Congress," the court found that Section 1441(b) offered an "express provision" limiting removal.  *Id.*  The court concluded that admiralty and general maritime law claims must fall within the category of "[a]ny other [civil] action" under Section 1441(b), and, as such, were removable only if no defendant was a resident of the forum state (the forum defendant rule).  *Id.* Following its construction of Section 1441, the Fifth Circuit stated that "the practical effect . . . is to prevent the removal of admiralty claims . . . unless there is complete diversity of citizenship (predicated upon out-of-state defendants)."[52]

---

[50] *See* Schoenbaum, *supra* note 7, §4-4, at 242 & n. 14 (noting that, despite the rule that savings clause cases require some independent source of jurisdiction to be removed to federal court, 1441(a) seems to imply that general maritime law claims would be under the "original" jurisdiction of the federal court and that no act of Congress generally forbids removal of admiralty claims).

[51] Hereinafter "Section 1441(a)."

[52] *Id.* ("We have concluded that admiralty and maritime claims may be removed to federal court only by non-forum defendants and only where there is complete diversity of citizenship.")(emphasis added).

Unequivocally, the court reached this conclusion by "constru[ing] the plain language of § 1441(b), *read in conjunction with* Romero," reiterating the notion that "Congress simply has not supplied the district courts with removal jurisdiction of admiralty claims absent diversity." *Id.* (emphasis added).

Though not discussed by the Fifth Circuit in *Dutile*, construing Section 1441(b) without the *Romero* rule produces nonsensical consequences.  Defendants would be allowed to remove admiralty suits capable of being brought in admiralty in federal court but only if the defendants were not citizens of the forum state under Section 1441(b).[53]  Moreover, if defendants removed claims under Section 1333 alone, the federal court would be forced either to treat the claim as an admiralty matter (denying the common law remedies reserved by the saving to suitors clause) or treat the claim as a maritime matter on the law side of the court, ignoring *Romero*, but only when none of the defendants were citizens of the forum state. [54] Thus, requiring diversity of citizenship to remove general maritime law claims seemed appropriate not only under *Romero* but as a practical matter as well.

### iii.  The 2011 Removal Amendments

In 2011, Congress amended Section 1441, particularly Section 1441(b).  Prior to the amendments, the forum defendant rule in 1441(b) read:

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship of residence of the parties.  *Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*

---

[53] Wright, Miller, & Cooper, *supra* note 2, § 3674 ("The fortuity of citizenship was irrelevant to the maritime policy factors germane to the removal question under discussion.")
[54] Wright, Miller, & Cooper, *supra* note 2, § 3674.

28 U.S.C. § 1441(b) (2006) (emphasis added).  After the amendments in 2011, Section 1441(b)(2) now provides the forum-defendant rule:

> A civil action *otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title* may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought.

28 U.S.C. § 1441(b)(2) (emphasis added).  Notably, Congress removed the language "[a]ny other such action" from subsection (b), which the Fifth Circuit in *Dutile* had partially relied on in reaching its conclusion on removal of general maritime law claims.   More recently, however, the Fifth Circuit discussed the 2011 amendment in *Barker v. Hercules Offshore, Inc.,* 713 F.3d 208 (5th Cir. 2013), though the case was decided under the prior version of Section 1441.

In *Barker,* the Fifth Circuit clearly stated that, "even though federal courts have original jurisdiction over maritime claims under 28 U.S.C. § 1333, they do not have removal jurisdiction over maritime cases which are brought in state court." *Id.* at 219.  Instead, the court reasoned, "such lawsuits are exempt from removal by the 'saving to suitors' clause . . . and therefore may only be removed when original jurisdiction is based on another jurisdictional grant, such as diversity of citizenship." *Id.*  Thus, in its discussion of the Congressional "clarification" of Section 1441(b), the Fifth Circuit determined that the forum-defendant rule only applies in actions removed on the basis of diversity jurisdiction and that "cases invoking admiralty jurisdiction under 28 U.S.C. § 1333 may require complete diversity prior to removal." *Id.* at 223 (citing *Dutile*, 935 F.2d at 63).[55]

---

[55] Though the statement "may require" seems vague, elsewhere the court made clear that any basis of jurisdiction other than merely admiralty jurisdiction under Section 1333 would be sufficient. "As a primary matter, this court has emphasized that 'the saving to suitors' clause under general maritime law 'does not guarantee [plaintiffs] a nonfederal forum, or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty. Instead, removal of maritime cases is permissible as long as there is an independent basis for federal jurisdiction." *Id.* at 220 (citation omitted).

*Barker* may be interpreted as simply reiterating *Dutile's* holding and recognizing no substantive change in removal jurisdiction as it pertains to maritime cases.[56]  Indeed, the House Report on the 2011 amendments evidences no intent to change the operation of removal of maritime or admiralty cases.[57]  However, some district courts have regarded *Barker's* discussion of the 2011 amendments as mere dictum, noting that *Barker* did not directly address the issue, and reached a different conclusion.[58]  As discussed above, in *Ryan v. Hercules Offshore, Inc.*, 945 F.Supp. 772 (S.D.Tex. May 13, 2013), the district court determined that with the 2011 amendment's removal of the language "[a]ny other such action" from Section 1441(b)—which *Dutile* relied upon—"an 'Act of Congress' prohibiting . . . [removal of] admiralty cases involving non-diverse parties" no longer exists.  *Id.* at 777.  Thus, general maritime law claims are freely removable under the current version of Section 1441.  Further, *Ryan* found that Section 1441(a), both pre-2011 and post-2011 amendment, refers to the federal courts' "original jurisdiction," and, therefore, general maritime claims are removable under Section 1333 under that section.  *Id.* at 778.  Several district courts similar factual circumstances have concurred with *Ryan* and allowed removal of general maritime law claims under the present version of section 1441;[59] yet other courts and commentators have disagreed,[60] finding no change to admiralty law and removal jurisdiction and avoiding relegating *Romero*'s policy to the "trash-heap."[61]

---

[56] *See Perrier v. Shell Oil Co.*, CA No. 14-490, 2014 WL 2155258 (E.D.La. May 22, 2014); Wright, Miller, & Cooper, *supra* note 2, § 3674.

[57] H.R.REP. NO. 112-10 ("Section 103(a)(3) places the provisions that apply to diversity actions under one subsection. This change is intended to make it easier for litigants to locate the provisions that apply uniquely to diversity removal.").

[58] *Ryan v. Hercules Offshore, Inc.*, 945 F.Supp. 772, 777 (S.D.Tex. May 13, 2013).

[59] *See Wells v. Abe's Boat Rentals Inc.*, No. H-13-1112, 2013 WL 3110322 (S.D. Tex. June 18, 2013); *Bridges v. Phillips 66 Co.*, CIV.A. 13-477, 2013 WL 6092803 (M.D.La. Nov. 19, 2013); *Carrigan v. M/V AMC Ambassador*, No. H-13-3208, 2014 WL 358353 (S.D. Tex. Jan. 31, 2014); *Harrold v. Liberty Ins. Underwriters, Inc.*, CIV.A. 13-762-JJB-SC, 2014 WL 688984 (M.D. La. Feb. 20, 2014); *Garza v. Phillips 66 Co.*, CIV.A 13-742, 2014 WL 1330547 (M.D.La April 1, 2014); *Genusa v. Asbestos Corp. Ltd.*, CIV.A. 13-794-JJB, 2014 WL 1831190 (M.D. La. May 8, 2014); *Provost v. Offshore Serv. Vessels, LLC*, CIV.A. 14-89-SDD-SCR, 2014 WL 2515412 (M.D. La. June 4, 2014).

### iv.  Applied to the General Maritime Law Claims

Enterprise contends that the Plaintiff's claims are removable under section 1441(a) as this Court has original jurisdiction under Section 1333 over Gregoire's unseaworthiness and maintenance and cure claims.  Further, because Gregoire's Jones Act claim is asserted in conjunction with the removable general maritime law claims, Enterprise asserts that the Jones Act claim is also removable under section 1441(c).  This Court disagrees.

Under Section 1441(a), removal of civil actions is permitted where the federal district court has "original jurisdiction" over the claim.  Section 1333 provides jurisdiction to the federal court exclusively for *in rem* actions and concurrently with the state courts for *in personam* actions; without more, removal of maritime cases instituted in state courts appears to apply, superficially, under Section 1441(a).  Yet Congress carefully wrought Section 1333 to balance interests of federalism and recognize historical development of maritime law in state courts by including the saving to suitors clause.  Maritime claims initiated in state court are, by definition, brought at common law under the saving to suitors clause as an "exception" to the original jurisdiction of the federal courts.[62]  If state court maritime cases were removable under Section 1333, the effect would be tantamount to considering all maritime law claims as part of federal

---

[60] *See Barry v. Shell Oil Co.,* No. 13–6133, 2014 WL 775662 (E.D.La. Feb. 25, 2014); *Coronel v. AK Victory,* No. C13–2304JLR, 2014 WL 820270 (W.D.Wash. Feb. 28, 2014); *Rogers v. BBC Chartering America, LLC,* 2014 WL 819400 at *1 (S.D.Tex. Mar. 3, 2014); *Freeman v. Phillips 66 Co.,* 2014 WL 1379786, *4 (E.D.La. April 8, 2014); *Rawls v. Phillips 66 Co.,* CA No. 14-602, 2014 WL 2003104 (E.D.La. May 15, 2014); *Perrier v. Shell Oil Co.,* 2014 WL 2155258 (E.D.La. May 22, 2014); *Gabriles v. Chevron USA, Inc.,* CIV.A. 14-669, 2014 WL 2567101 (W.D. La. June 6, 2014); *Maturin v. Commerce & Industry Ins. Co.,* CIV. A. 14-603, 2014 WL 2567150 (W.D.La. June 6, 2014); *Alexander v. Seago Consulting, LLC,* 4:14-CV-1292, 2014 WL 2960419 (S.D. Tex. June 23, 2014); *In re Foss Mar. Co.,* 5:12-CV-00021-TBR, 2014 WL 2930860 (W.D. Ky. June 27, 2014).

[61] David W. Robertson & Michael F. Sturley, *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits*, 38 TUL. MAR. L.J. 419, 432-33 (2014) ("But we will see below that the Act is being read in some circles to relegate the Romero principle to the trash heap.").

[62] *See Barker*, 713 F.3d at 222 ("[A]dmiralty jurisdiction is not present in this suit because Barker filed in state court, therefore invoking the saving-to-suitors exception to original admiralty jurisdiction."); *Linton*, 964 F.2d at 1487 ("Because admiralty jurisdiction is exclusively federal, a true 'admiralty' claim is never cognizable in state court.").

question jurisdiction under Section 1331, eviscerating the saving to suitors clause and

undermining the holding and policies discussed at length in *Romero*.  That the saving to suitors

clause does not guarantee a non-federal forum but only common law remedy, a rule oft cited by

the Fifth Circuit,[63] does not lead to the conclusion that the suit is invariably removable.  As

already established, maritime law claims brought under the saving to suitors clause in state court

have traditionally required some other basis of jurisdiction independent of Section 1333 to be

removable, supported by practical reasons and sound policy.

   Congress' 2011 amendments to Section 1441 do not alter this conclusion.  Though *Dutile*

determined that "[a]ny other such action" under Section 1441(b) was an "Act of Congress"

prohibiting removal of saving to suitors clause cases absent diversity and out-of-state defendants,

the removal of this language in no way modified the long-standing rule that general maritime law

claims require some other non-admiralty source of jurisdiction to be removable.  Congress has

not given any indication that it intended to make substantive changes to removal of admiralty

matters, and the Fifth Circuit has not indicated otherwise.  Despite the present debate over

formalistic administration of admiralty law in the context of removal jurisdiction versus

adherence to traditional admiralty procedure,[64] this Court is bound to follow the clear precedent

before it.  Therefore, this Court finds that general maritime law claims are not removable under

Section 1333 as part of the original jurisdiction of the court and require an independent basis of

jurisdiction.

   In determining whether remand is appropriate, the Court must "scrupulously confine . . .

jurisdiction to the precise limits which the statute has defined,"[65] and construe doubts concerning

---

[63] *See, e.g., Barker*, 713 F.3d at 220 (the saving to suitors clause does not guarantee a non-federal forum); *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir. Unit A June 1981).
[64] *See generally* Bahadur, *supra* note 44; Freidell, *supra* note 44; Robertson & Sturley, *supra* note 61.
[65] *Romero*, 358 U.S. at 380, 79 S.Ct. at 484, 3 L.Ed.2d at 386.

removal in favor of remand.[66]  Enterprise has not offered any other valid basis on which this

Court could have exercised jurisdiction, such as diversity, and has thus failed to meet its burden

for removal.  Because no basis for jurisdiction exists, Gregoire's maritime law claims are not

removable.  This conclusion, in turn, impacts Enterprise's argument that the Jones Act claim is

removable under Section 1441(c).


### b.  The Jones Act Claim

Gregoire also brings a Jones Act claim under 46 U.S.C. § 30104 *et seq.*  The Jones Act

"modified the prior maritime law of the United States by giving to seamen injured through

negligence a right of action in personam against the employer." *Pate v. Standard Dredging*

*Corp.,* 193 F.2d 498, 500-01 (5th Cir. 1952).  The Jones Act also incorporates the Federal

Employees Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*  46 U.S.C. §30104.  Under 28 U.S.C.

§ 1445, FELA actions are non-removable; thus by way of incorporating FELA, Jones Act claims

are not subject to removal, even if the parties are diverse.[67]

Though Enterprise concedes that Jones Act claims are non-removable, Enterpise argues

that in this case the Jones Act claim becomes removable under Section 1441(c).  Section 1441(c)

states that if an action includes a "claim that has been made nonremovable by statute, the entire

action may be removed if it would be removable without the inclusion of the [nonremovable

claims]." Specifically, Enterprise argues that Gregoire's Jones Act claim is removable because

the general maritime law claims are removable under section 1441(a) as part of the original

jurisdiction of this Court (without the inclusion of the non-removable Jones Act claim);

---

[66] *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir.2008); *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d
720, 723 (5th Cir. 2002).
[67] *See, e.g., Fields v. Pool Offshore, Inc.,* 182 F.3d 353, 356 (5th Cir. 1999); *Lirette v. N.L. Sperry Sun, Inc.*, 810
F.2d 533, 535 (5th Cir. 1987).

therefore, under section 1441(c), the entire action may be removed.  However, as Judge

Engelhardt elucidated in *Freeman v. Phillips 66 Co.*, Section 1441(c) does not apply where the

non-removable claim is joined with a general maritime law claim.  2014 WL 1379786, *4

(E.D.La. April 8, 2014).  This Court and various others have already established that general

maritime law claims do not "arise under" the Constitution for purposes of federal question

jurisdiction nor are they removable under Section 1333 alone.  Therefore, Section 1441(c) does

not apply in this case.

Finally, as to Gregoire's final assertion, this Court does not find that Enterprise lacked an

objectively reasonable basis for seeking removal.  Given the unsettled nature of district court

opinions on the removability of general maritime law claims and dearth of definitive guidance on

the issue from the Fifth Circuit, the Court is of the opinion that seeking removal in this case was

objectively reasonable if not strategically sound.  Thus, the Court does not find either an award

of attorney's fees under 28 U.S.C. § 1447(c) or sanctions under Rule 11 of the Federal Rules of

Civil Procedure appropriate.

Accordingly,

**IT IS ORDERED** that plaintiff's Motion to Remand (R. Doc. 6) is hereby **GRANTED**,

and this matter is hereby **REMANDED** to the Civil District Court for the Parish of Terrebonne,

Louisiana.

New Orleans, Louisiana, this __6th____ day of _____August_____, 2014.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**